UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

CHAGO HAYNES,

                                    Defendant.

**ORDER**

14 Cr. 726 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On July 9, 2020, Chago Haynes, proceeding pro se, filed an "Affidavit of Claim."
(Dkt. No. 149)  Liberally construed, Haynes's "Affidavit of Claim" seeks an order, pursuant to
28 U.S.C. § 2255, vacating his Section 924(c)(1)(A) conviction under United States v. Davis,
139 S. Ct. 2319 (2019), and directing that he be re-sentenced.[1]  For the reasons stated below,
Haynes's application will be denied.

**BACKGROUND**

**I.     OFFENSE CONDUCT AND INDICTMENT**

In September 2014, a cooperating witness told the Drug Enforcement Agency
("DEA") about a man he knew as "Love" – later identified as Haynes's co-defendant, Nakai
Lamar – who committed robberies, sold crack cocaine and marijuana, and had access to guns.
(Cmplt. (Dkt. No. 1) ¶¶ 8, 10)  At the direction of the DEA, the cooperating witness called Lamar
to discuss robbing a fictional drug dealer of a fictional drug shipment.  (Id. ¶ 9)  Lamar agreed to
commit the robbery, and said that he had a minivan and firearms with which to commit the
robbery.  (Id. ¶¶ 12-13)

---

[1]  Although Haynes's submission was filed on July 9, 2020, the submission was not entered on
this District's Electronic Case Files ("ECF") system until August 27, 2020.

On October 20, 2014, the cooperating witness met with Lamar, Haynes, and their co-defendant, Tyrone Meachem, to discuss the robbery.  (Id. ¶ 14)  Lamar had recruited Meachem and Haynes to commit the robbery.  The cooperating witness told the defendants that the purported target of the robbery would have 14 kilograms of cocaine and 4 kilograms of heroin.  (Id.)  Lamar, Meachem, Haynes, and the cooperator discussed how they would conduct the robbery.  (Id.)

Surveillance agents observed Lamar enter a building in the Bronx and emerge with an FAO Schwarz bag, which he handed to Haynes.  (Id.)  Lamar instructed Haynes to put the bag into a Nissan Altima.  (Id.)  Lamar then got into another car with the cooperating witness, while Haynes and Meachem followed in the Nissan Altima, with the firearms.  (Id. ¶ 15)  The cars were driven to a pre-arranged location, where Haynes and his co-defendants were surrounded by agents and placed under arrest.  (Id.)  Inside the FAO Schwarz bag, agents recovered a loaded .22 caliber handgun and a loaded .32 caliber handgun.  (Id.)  Haynes and Meachem were also found in possession of gloves, which Meachem later said the conspirators had planned to use to avoid leaving fingerprints.  (Id. ¶ 19)  Meachem and Lamar admitted to agents that they were in route to commit a robbery of cocaine.  (Id. ¶¶ 18-19)

On October 31, 2014, Haynes was charged with conspiracy to distribute narcotics, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Indictment (Dkt. No. 9) Count One); with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (id. Count Two); and with using or carrying a firearm during and in relation to (1) a drug trafficking crime – the narcotics conspiracy charged in Count One – and (2) a crime of violence – the robbery conspiracy charged in Count Two – in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Id. Count Three)

## II.  **GUILTY PLEA**

On June 9, 2016, Haynes entered into a plea agreement with the Government, in which he agreed to plead guilty to Counts Two and Three of the Indictment.  (Plea Agreement (Dkt. No. 152-1))  In exchange for Haynes's guilty plea, the Government agreed to drop Count One, the narcotics conspiracy count.  (Id.)

The plea agreement describes Counts Two and Three as follows:

> Count Two charges the defendant with conspiracy to commit Hobbs Act robbery . . . . Count Three charges the defendant with using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of (a) the drug trafficking crime charged in Count One of the Indictment, and (b) the crime of violence charged in Count Two of the Indictment. . . .

(Id. at 2)[2]

On June 9, 2016, Haynes pleaded guilty to Counts Two and Three (Plea Tr. (Dkt. No. 107)), which the Court described as follows:

> You should understand that you are charged in Count Two of the Indictment with a felony offense of violating Title 18, United States Code, Section 1951, which relates to conspiring to commit a robbery.
>
> You should further understand that in Count Three you are charged with using and caring a firearm during . . . a crime of violence, in this case the robbery conspiracy that's charged in Count Two.

(Id. at 6)

In summarizing the elements of the Section 924(c) offense, the Court stated that

> Count Three of the Indictment charges you with using and carrying a firearm in connection with the robbery conspiracy that's charged in Count Two.  The elements of that offense – . . . all of which the government would have to prove beyond a reasonable doubt if the case were to go to trial – are as follows:
>
> First, the government would have to show that you committed the crime of robbery conspiracy that's charged in Count Two.

---

[2]  Citations to page numbers refer to the pagination generated by this District's ECF system.

Second, the government would have to show that you knowingly used or carried a firearm during and in relation to the commission of the robbery conspiracy charged in Count Two.

(Id. at 11)

The Government then asked the Court to alter its description of the elements of Count Three to make the description consistent with the charging language in the Indictment and the parties' plea agreement:

[W]ith respect to Count Three, not only would the government have to prove that the defendant used or possessed a firearm during and in relation to the robbery offense but also, pursuant to the plea agreement, the defendant will be pleading guilty to use and possession of the firearm with respect to the charge in Count One, that is, the drug trafficking crime, even though he is not pleading guilty to Count One. So Count Three charges use and possession of the gun in furtherance of both Counts One and Two, and that's also reflected on the first page of the plea agreement.

(Id. at 18)

The Court then altered its description of the elements of Count Three as follows:

When I was going through the elements of that charge with you, I told you that the government would have to prove that you committed the crime of robbery conspiracy that's charged in Count Two, and, also, the government would have to show that you knowingly used or carried a firearm during and in relation to the commission of the robbery conspiracy that's charged in Count Two. I'm going to supplement that as follows:

In addition to what I told you a moment ago in connection with Count Three, the government would also have to show that you committed the crime of conspiring to distribute and possess with intent to distribute heroin and cocaine as charged in Count One of the Indictment, and the government would also have to show that you knowingly used or carried a firearm during and in relation to the commission of that drug trafficking offense charged in Count One.

Do you understand that?

THE DEFENDANT: Yes.

(Id. at 19)

4

Haynes then gave the following factual allocution in response to the Court's

questions:

> THE COURT: . . . Mr. Haynes, we've reached the point in the proceedings where I need you to tell me what you did which makes you believe that you are guilty of the crimes charged in Counts Two and Three.
>
> THE DEFENDANT:  Yes. I foolishly entered in upon an agreement to conspire to rob a drug dealer.  I carried a weapon.  And the weapon was a gun.
>
> THE COURT:  It was a firearm, right?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And did that happen on or about October 20th, 2014?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And where were you when it happened?
>
> THE DEFENDANT:  In Manhattan.
>
> THE COURT:  And you entered into an agreement with others to rob someone who was believed to be a drug dealer, right?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And your understanding was that the drug dealer possessed cocaine and heroin?
>
> THE DEFENDANT:  Yes.

(Id. at 20)

## III.  <u>SENTENCING</u>

Sentencing took place on November 30, 2016.  (Sentencing Tr. (Dkt. No. 156))

Haynes did not object to the factual portions of the presentence report, which the Court adopted.

(Id. at 3; PSR (Dkt. No. 110))  As to the Sentencing Guidelines, the Court made the following

findings:

> I find that the offense level as to Count Two is 18, criminal history category is II, and the applicable guidelines range on Count Two is 30 to 37 months' imprisonment.  As to Count Three, a mandatory consecutive sentence of 60

5

months' imprisonment is applicable. . . . [T]he effective guidelines range is 90 to 97 months' imprisonment.

(Sentencing Tr. (Dkt. No. 156) at 4-5)

The Court sentenced Haynes to time-served – approximately five months – on Count Two and to sixty months' imprisonment on Count Three, with those terms to run consecutively.  (Sentencing Tr. (Dkt. No. 156) at 14, 17)  According to the Bureau of Prisons' website, Haynes's projected release date is February 19, 2021.

## IV.    PROCEDURAL HISTORY

On June 24, 2019, the Supreme Court issued its decision in United States v. Davis, holding that 18 U.S.C. § 924(c)(3)(B) – which defines "crime of violence" – is unconstitutionally vague.  United States v. Davis, 139 S. Ct. 2319, 2336 (2019).  As discussed above, on July 9, 2020, Haynes filed an affidavit in which he seeks an order vacating his Section 924(c)(1)(A) conviction under Davis, and directing that he be resentenced.  (Affidavit of Claim (Dkt. No. 149))

In a September 4, 2020 letter, the Government opposes Haynes's application. (Sept. 4, 2020 Govt. Ltr. (Dkt. No. 152))  While the Government concedes that the robbery conspiracy charged in Count Three cannot serve as a Section 924(c) predicate offense after Davis (id. at 7),[3] the Government contends that the record justifies use of the narcotics conspiracy charged in Count One as a Section 924(c) predicate.  (Sept. 4, 2020 Govt. Ltr. (Dkt. No. 152) at 4-7 (citing United States v. Dussard, 967 F.3d 149 (2020))

---

[3] See, e.g., United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019) ("We are obliged to vacate [defendant's Section 924(c)] conviction because Davis precludes us from concluding, as we did in our original opinion, that [defendant's] Hobbs Act robbery conspiracy crime qualifies as a 924(c) crime of violence.").

## DISCUSSION

### I.    LEGAL STANDARD

28 U.S.C. § 2255 provides, in relevant part, that "[a] prisoner in custody under sentence of a [Federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence . . . is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  "Relief under section 2255 is available only 'for constitutional error, lack of jurisdiction, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Rosa v. United States, 170 F. Supp. 2d 388, 396 (S.D.N.Y. 2001) (quoting Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (internal quotation marks and citations omitted)).

The court must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest."  Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted).

### II.    ANALYSIS

Given the Second Circuit's recent decision in United States v. Dussard, 967 F.3d 149 (2020), Haynes's request for relief under Davis must be denied.

Like Haynes, Dussard pled guilty to conspiracy to commit Hobbs Act robbery, and to using and carrying a firearm (1) "during and in relation to a crime of violence . . . , namely, the "robbery conspiracy charged in Count One of this Indictment," and (2) "during and in relation to a drug trafficking crime . . . namely, the narcotics conspiracy charged in Count Two of this Indictment."  Dussard, 967 F.3d at 152 (emphasis omitted).  On appeal, Dussard argued that he "in fact [had] pleaded guilty to possession of a firearm in furtherance of a crime of

violence," and accordingly his Section 924(c) conviction could not stand in light of <u>Davis</u>.  <u>Id.</u> at

151.

      Applying the "plain-error standard," the Second Circuit rejected Dussard's

argument, finding that

> the evidence . . . provided an ample predicate for a conviction under
> § 924(c)(1)(A)(i) on the basis of firearm possession during and in relation to a
> drug trafficking crime.  It included Dussard's sworn admission that he knowingly
> participated in a conspiracy "to steal narcotics at gun point from people we
> believed were drug dealers transporting narcotics" (Plea Tr. 13); and Dussard did
> not contest the PSR descriptions of meetings he attended with other
> coconspirators at which (a) it was discussed that the targeted drug dealers would
> be transporting 12 kilograms of cocaine – a quantity inconsistent with any notion
> that the coconspirators intended to steal the drugs for their own personal use--and
> (b) a coconspirator stated that he already had buyers lined up for the cocaine they
> would steal.
>
> Thus, if Dussard and the government had anticipated the <u>Davis</u> decision making
> the predication of Count Three on the Hobbs Act conspiracy invalid, they could
> have avoided the invalidity in Dussard's Count Three plea of guilty just by
> changing the two lines of the Agreement's Count Three description that referred
> to a crime of violence and Hobbs Act conspiracy, to have that description refer
> instead to the allegation of firearm possession "during and in relation to a drug
> trafficking crime . . . , namely, the narcotics conspiracy charged in Count Two of
> this Indictment. . . ."

<u>Id.</u> at 151, 155-58.

      The circumstances of <u>Dussard</u> are very similar to the circumstances here.

Dussard, like Haynes, was charged with using and carrying a firearm "during and in relation to a

crime of violence . . . namely, the robbery conspiracy charged in Count One of this Indictment,

and with using and carrying a firearm during and in relation to a drug trafficking crime."

<u>Dussard</u>, 967 F.3d at 152.  Dussard, like Haynes, admitted in his plea allocution that he had

conspired with others who possessed firearms to steal narcotics at gun point.  (<u>Id.</u> at 153; Plea Tr.

(Dkt. No. 107) at 20) (Haynes allocuting that he "conspire[d] to rob a drug dealer" while

"carr[ying] . . . a gun").

Dussard's presentence report – to which he did not object – stated that "the coconspirators discussed their understanding that the targeted drug dealer would be carrying some 12 kilograms of cocaine.  One of the coconspirators said he had lined up buyers for the cocaine." Dussard, 967 F.3d at 153.  Similarly, Haynes's presentence report states that Haynes and his co-conspirators had discussed "where they would go after the robbery to split up" the fourteen kilograms of cocaine and four kilograms of heroin they intended to steal.  (PSR (Dkt. No. 110) ¶¶ 22-23)  Haynes did not object to this portion of the presentence report at sentencing. (Sentencing Tr. (Dkt. No. 156) at 3)

Finally, in Dussard, the defendant faced a mandatory minimum sentence of ten years' imprisonment for the drug trafficking conspiracy charged in Count Two under 21 U.S.C. § 814(b)(1)(A), and in Dussard's plea agreement the Government agreed to drop this charge in exchange for Dussard pleading guilty to Hobbs Act robbery conspiracy and a Section 924(c)(1)(A) violation.  Dussard, 967 F.3d at 154.  Similarly, Haynes was charged in Count One with participating in a drug trafficking conspiracy in violation of 21 U.S.C. §§ 841(b)(1)(A), which exposed him to a ten-year mandatory minimum sentence.  (Indictment (Dkt. No. 9) Count One)  In Haynes's plea agreement, the Government agreed to drop this charge in exchange for Haynes's agreement to plead to Hobbs Act robbery conspiracy and to a Section 924(c)(1)(A) charge.   (Plea Agreement (Dkt. No. 153) at 10)

Unlike in Dussard, however, Haynes's plea agreement explicitly states that he is pleading guilty to "possessing a firearm in furtherance of (a) the drug trafficking crime charged in Count One of the Indictment, and (b) the crime of violence charged in Count Two of the Indictment. . . ."  Compare Plea Agreement (Dkt. No. 152-1) at 2 with Dussard, 967 F.3d at 152 (noting that Dussard's plea agreement states that "Count Three charges the defendant with using

and carrying a firearm during and in relation to a crime of violence, to wit, the Hobbs Act

robbery charged in Count One of the Indictment"). And, unlike in Dussard, Haynes was advised

during his guilty plea allocution that the Section 924(c)(1)(A) charge was predicated both on his

commission of a crime of violence and his commission of a drug trafficking crime. (Plea Tr.

(Dkt. No. 107) at 19; Dussard, 967 F.3d at 153)

   In rejecting Dussard's challenge to his Section 924(c)(1)(A) conviction – despite

the fact that Dussard's plea agreement and guilty plea hearing make no reference to the charged

drug trafficking conspiracy as a predicate for the Section 924(c) charge – the Second Circuit

notes that

> Dussard was motivated – and the government was willing – to enter into a plea
> agreement that would allow him to plead guilty to a § 924(c)(1)(A)(i) offense,
> with its mandatory minimum consecutive five-year prison term, plus an offense
> that had no mandatory minimum prison term. Had he and the government
> anticipated the decision in Davis, this could easily have been accomplished – with
> no difference in the offense of conviction or in the punishment – by simply having
> the two lines of the Agreement describing Dussard's Count Three agreed-upon
> plea refer not to a crime of violence but refer instead to the drug trafficking crime
> that was also alleged as a § 924(c)(1)(A)(i) predicate in Count Three. Dussard has
> pointed to nothing in the record to indicate that he would not have agreed to that
> language. Indeed, it would have resulted in precisely the same judgment on
> Count Three that was in fact entered, mistakenly, which he has made no effort to
> correct.[4]

Dussard, 967 F.3d at 158.

   In assessing whether the Davis-related "error affected Dussard's substantial

rights," the Second Circuit considered whether Dussard had "show[n] that there is a reasonable

probability that, but for the error, he would not have pleaded guilty." Id. at 156. The court

---

[4] While Dussard's judgment "correctly stated that Dussard was guilty of Hobbs Act conspiracy
on Count One," "it erroneously stated that Dussard's conviction on Count Three was for
'[p]ossession of firearm in furtherance of narcotics conspiracy.' . . . There was no motion to
correct the judgment." Id. at 154.

concluded that Dussard had made no such showing because – given the record – he "would have had little genuine hope of being acquitted of the Count Two drug trafficking conspiracy after a trial." Id. at 157.  Moreover, "nothing about his plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to Count Three only if it was tied to the charge of Hobbs Act conspiracy and that he would not have pleaded guilty to Count Three if the Plea Agreement had referred instead to the drug trafficking predicate." Id. at 158.  The Second Circuit therefore "conclude[d] that Dussard has not shown that the error in his conviction on Count Three, made plain by the decisions in Davis and Barrett invalidating the stated crime-of-violence predicate for that offense, affected his substantial rights." Id.

Here, in order to obtain relief under 28 U.S.C.§ 2255, Haynes must show "actual prejudice" stemming from the Davis-related error.  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).  Haynes therefore has a higher burden than Dussard did on direct appeal.  See United States v. Frady, 456 U.S. 152, 166 (1982) ("[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.").  And, as the foregoing analysis demonstrates, the circumstances of Haynes's guilty plea make it even less likely that he suffered prejudice than did Dussard.

Given Haynes's allocution, his plea agreement, and the unchallenged factual account set forth in the presentence report, Haynes has not shown that the Davis-related error he cites caused him to suffer "actual prejudice."

## **CONCLUSION**

For the reasons stated above, Haynes's application under 28 U.S.C § 2255 (Dkt.

No. 149) is denied.  The Government is directed to ensure that Haynes is served with a copy of

this order forthwith.

Dated: New York, New York
        September 23, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge